**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT PETERS (#M-52851),** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **No. 18 C 4166** |
| | ) | |
| **JEREMIAH BROWN, Day to Day Warden, Lawrence Correctional Center,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Scott Peters, a prisoner at the Lawrence Correctional Center, brings a 28 U.S.C. § 2254 habeas corpus petition challenging his convictions for the attempted murder of three McHenry County Sheriff's deputies from the Twenty-Second Judicial Circuit Court, McHenry County, Illinois. For reasons explained below, the court concludes that Mr. Peters's claims are time-barred or meritless. The petition is denied.

## FACTUAL BACKGROUND

State court factual findings, including facts set forth in the state appellate court opinion, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 583 U.S. 33, 34 (2018) (per curiam); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such a showing, and the court recounts the facts as explained in the Illinois Appellate Court's opinion affirming his conviction, *Illinois v. Peters*, 2018 IL App (2d) 150650, ¶ 1, 3; 99 N.E.3d 489, 495; 421 Ill Dec. 245, 251, and affirming the denial of his 2-1401 petition. *Illinois v. Peters*, 2020 IL App (2d) 170857-U.[1]

1 Respondent includes the state appellate court opinions and briefs from the 2-1401, postconviction petition, and successive postconviction petition proceedings in the record. (Dkt. 140.) Respondent does not file the direct appeal appellate court opinion in the record, but the court takes judicial notice of that decision. *Smith v. Radtke*, 48 F.4th 502, 510 (7th Cir. 2022).

As described in the direct appeal opinion, on October 16, 2014, three McHenry County deputies went to Petitioner's house to conduct a wellness check on Petitioner's wife. *Illinois v. Peters*, 2018 IL App (2d) 150650, ¶ 3; 99 N.E.3d at 495; 421 Ill Dec. at 251 Two deputies knocked on the front door, while the third positioned himself at the rear of the house. *Id*. ¶ 4. Petitioner did not respond to the first two knocks on the door, but the deputies witnessed the home's video security cameras track their movement and saw a window blind move. *Id*. ¶ 5. When deputies knocked a third time, Petitioner responded, told the deputies that his wife was fine, and instructed the deputies to leave. *Id*. The deputies told Petitioner they would not leave before speaking to his wife, and Petitioner again refused their requests. *Id*. After some time, Petitioner told the deputies to "come on in," but refused to exit the home himself; concerned about walking into an ambush, the deputies declined to enter the home and instead directed Petitioner to step outside. *Id*. ¶¶ 5–6. But Petitioner remained indoors, and at this point announced: "We're going to do this, let's do this. Airborne." *Id*. ¶ 6. Upon hearing Petitioner say "Airborne," one of the deputies at the front door pushed the other officer out of the way, and they both took cover. *Id*. At the same time, gunfire erupted from inside Petitioner's home through the front door. *Id*. The deputies heard shots coming through the front door and the sounds of breaking glass as they turned to flee. *Id.* ¶ 9. The third deputy rushed to the front of the home where all three deputies fled from the home to squad cars parked on the street approximately 300 feet away. *Id*. ¶¶ 3, 6.

After taking cover, one of the deputies saw Petitioner shooting at them with a rifle. *Id.* ¶ 7. The officers returned fire while calling for backup and retreating from the home. *Id.* ¶ 8. They heard Petitioner call out, "I'm a U.S. Army paratrooper, I hope you're ready to die 'cause I am." *Id*. The deputies eventually made it to a fence approximately 200 feet from the home. *Id*.

Both of the deputies who had approached the front door of the home were injured: the deputy who had pushed his fellow officer out of the way was shot in the lower back during the

initial volley through the home's door. *Id*. ¶ 7. Then, as he and his fellow officer attempted to flee, both were hit by gunshot in their legs, and one felt a bullet go by her head as she fled. *Id*. ¶ 9.

The shooting eventually stopped, and law enforcement officers set up a perimeter around Petitioner's home. *Id*. ¶ 10. Later that evening, Petitioner was arrested while walking on a nearby road and taken to the police station. In a custodial statement, Petitioner admitted that he shot the deputies but claimed he thought they were intruders and stopped shooting once he realized they were deputies. *Id*. Petitioner also claimed he had fled the scene in fear for his life, disposing of his weapon in a local waterway. *Id*.; *Illinois v. Peters*, 2020 IL App (2d) 170857-U at ¶ 10. The police later recovered a Colt AR-15 Harding rifle; they and verified that it worked and had fired at least 17 cartridge cases, which were found outside Petitioner's home. *Illinois v. Peters*, 2020 IL App (2d) 170857-U at ¶ 10. An evidence officer who collected and processed evidence at Petitioner's home was able to locate a video monitor that showed a visual and audio feed from Petitioner's front porch, but did not recover video or audio from the shooting itself. *Id*. ¶ 11.

**PROCEDURAL HISTORY**

Following an April 2015 jury trial, Petitioner was convicted of attempted murder of the three deputies and sentenced to 135 years of imprisonment. *Peters*, 2018 IL App (2d) 150650, ¶ 14; 99 N.E.3d at 498. His conviction and sentence were affirmed on direct appeal. Both his petition for leave to appeal ("PLA"), *Illinois v. Peters*, No. 123475, 108 N.E.3d 880 (Ill. Sept. 26, 2018), and his petition for a writ of certiorari, *Illinois v. Peters*, No. 18-9038, 139 S. Ct. 2724 (June 17, 2019), were denied, completing his direct appeal.

While his direct appeals were pending, Petitioner filed three additional *pro se* proceedings: two in state court and one before this court. First, in November 2015, he filed a petition for a writ of habeas corpus, 735 ILCS 5/10-102, before the Twelfth Judicial Circuit Court, Will County,

Illinois. (Pet. Filing [1-3], ¶ 1–28.) The Will County court transferred the matter to the Twenty-Fourth Judicial Circuit Court, Randolph County, Illinois. (*Id.* ¶ 47.) That court denied the habeas corpus petition (Order Denying Pet. [1-4], ¶¶ 3–4.); and the Fifth District Appellate Court dismissed his appeal for failure to prosecute (specifically, as explained below, for failure to provide the record on appeal). *Peters v. Lamb*, No. 5-17-0051 (5th Dist. Ill. App. Ct. June 23, 2017) (Order Dismissing Appeal [1-5] ¶ 45.). Petitioner sought leave to appeal, but his PLA was denied by the Supreme Court of Illinois. *Peters v. Lamb*, No. 122628, 93 N.E.3d 1068, 1608 (Table); 419 Ill. Dec. 651, 651 (Ill. Nov. 22, 2017).

Second, on July 14, 2017, Petitioner brought a petition for relief from judgment before the McHenry County Circuit Court, the court of conviction. *See* 735 ILCS 5/2-1401 (Illinois statute permitting a party to seek relief from final judgment). The trial court denied the petition. *Illinois v. Peters,* 2020 IL App (2d) 170857-U ¶ 22. The Appellate Court of Illinois, Second District, affirmed, *id.* ¶ 37, and the Supreme Court of Illinois denied Petitioner's PLA. *Illinois v. Peters*, No. 125992, 154 N.E.3d 766, 766 (Ill. Sept. 30, 2020) (Table).

Then on May 14, 2018,[2] Petitioner filed a federal habeas corpus petition. (Pet. for Writ of Habeas Corpus [1].) This petition solely challenged the state court's denial of Petitioner's state habeas petition (the only state court proceeding that had been completed at this point). Proceedings for Petitioner's direct appeal and petition for relief were still pending, and Petitioner would not file postconviction proceedings in state courts for years. As noted, Petitioner's original state court habeas petition, filed in November 2015, was dismissed, and the state appellate court

---

2 Because Petitioner's original federal habeas corpus petition does not include proof of service, the court cannot apply the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 275 (1988). The court therefore uses the date the petition was filed in federal court—May 14, 2018. Within the statute of limitations, the most favorable date possible for Petitioner is May 9, 2018—the date of the petition. (Pet. for Writ of Habeas Corpus [1] ¶ 18.) The difference between May 9, 2018 and May 14, 2018 is not outcome determinative; so, the court need not determine the exact filing date.

had denied the appeal from that ruling for want of prosecution; specifically, Petitioner failed to file the record on appeal. *Peters v. Lamb*, No. 5-17-0051 (5th Dist. Ill. App. Ct. June 23, 2017). (Appeal and Order Dismissing Pet.'s Appeal [1-5] ¶ 45.) The state trial court advised Petitioner to pay $66.65 for the cost to prepare and deliver the record on appeal. (Appeal and Order Dismissing Pet.'s Appeal [1-5] ¶ 32.) The appellate court had granted Petitioner's request for *in forma pauperis* ("IFP") status, but that ruling only resulted in waiver of the appellate filing fee. In dismissing his appeal, the court acknowledged Petitioner's assertion that he was indigent and could not pay the full record preparation fee, but confirmed that because his state habeas corpus appeal was a civil appeal, Petitioner was not entitled to a record without payment. (*Id.*)

It was that ruling that prompted the petition before this court. Petitioner filed his federal habeas corpus petition in the Southern District of Illinois, to challenge the state court's refusal to accommodate his impoverished status on the fee issue. (Pet. For Writ of Habeas Corpus [1] ¶ 8.) The petition was transferred to this court (Notice of Transfer [13]) and, because Petitioner's direct appeal was still pending, Judge Reinhard, who was then presiding, stayed the federal habeas corpus petition in December 2018 to await resolution of the state proceedings. (Order Staying Pet. [27] ¶ 1.)

As of June 8, 2020, the appeal from Petitioner's § 2-1401 petition for relief from judgment (the second of the two petitions he filed during the pendency of his direct appeal) remained pending. On June 8, Petitioner filed a *pro se* postconviction petition before the McHenry County Circuit Court. *Illinois v. Peters*, 2022 IL App (2d) 210365-U, ¶ 6; *see also* 725 ILCS 5/122-1 (Illinois statute permitting a party to file a postconviction petition). The state trial court denied that petition, *Peters*, 2022 IL App (2d) 210365-U ¶ 17, the Appellate Court of Illinois affirmed, *id.* ¶ 34, and the Supreme Court of Illinois denied Petitioner's PLA. *Illinois v. Peters*, No. 129294, 210 N.E.3d 771, 771 (Table); 463 Ill. Dec. 615, 615 (Ill. Mar. 29, 2023) (unpublished order under ILCS S. Ct. Rule 23).

On October 3, 2022, Petitioner sought leave to file a *pro se* successive postconviction petition in the McHenry County Circuit Court. *Illinois v. Peters*, 2024 IL App (2d) 230116-U, ¶ 8. The state court denied this request, and also denied Petitioner's request to file amended and second amended successive postconviction petitions. *Id.* ¶¶ 13, 15. The Appellate Court of Illinois, Second District affirmed, *id.* ¶ 28, and the Supreme Court of Illinois denied Petitioner's PLA, *Illinois v. Peters*, No. 130841, 244 N.E.3d 231, 231 (Table); 477 Ill. Dec. 805, 805 (Ill. Sept. 25, 2024) (unpublished order under ILCS S. Ct. Rule 23). This denial completed Petitioner's state court proceedings.

This court lifted the stay of the federal petition court filed in 2018, and gave Petitioner the option of standing on his original habeas corpus petition or filing an amended petition. (Notice of Docket Entry [104] ¶ 1.) On January 14, 2025, Petitioner filed an amended habeas corpus petition ("Amended Petition") that is now the controlling pleading in this case.[3] (Am. Pet. [114].) In that Amended Petition, Petitioner alleges: (1) multiple instances of ineffective assistance of counsel; (2) a challenge to the sufficiency of the evidence; (3) multiple instances of prosecutorial misconduct; (4) destruction of evidence by prosecutors; (5) wrongful denial of free transcripts in the state habeas corpus proceeding; (6) error by the state court in denying Petitioner leave to bring a successive postconviction petition; (7) Fourth Amendment violations; and (8) multiple errors rendering Petitioner's case fundamentally unfair.[4] (Def. Answer to Am. Pet. [139], ¶¶ 11–14.) The petition is fully briefed. (*See id.* ¶ 8; *see also* [147] ¶ 2.)

3 The pages of the amended habeas corpus petition appear to be filed out of order in Docket No. 114. Respondent's counsel reordered the pages into their correct order and refiled it at Docket No. 139-1. The court thanks counsel for this effort.

4 Petitioner raised 10 claims in his Amended Petition. (Am. Pet. [114] ¶¶ 23–27.) Some claims were repetitive and were consolidated in the court's listing of claims.

## ANALYSIS

### I. Timeliness

Respondent correctly argues that nearly all of Petitioner's claims in the Amended Petition are barred by the statute of limitations. 28 U.S.C. § 2244(d). As detailed below, though the original federal habeas corpus petition in this court was timely filed, recall that its claims were limited to dismissal of the state habeas petition (the one which was dismissed on appeal for failure to file the record). To relate back to the original habeas petition, claims in both the amended and original petition must share a "common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). Because the original petition was limited to the resolution of Petitioner's state habeas corpus petition, the Amended Petition only relates back to claims involving the state habeas proceedings.

Petitioner's case before this court is governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). That one-year period starts on the latest date of: (A) the completion of direct appeal (or expiration of time to bring the direct appeal); (B) the removal of an unconstitutional state-created impediment that had previously prevented the filing of the petition; (C) the recognition of a new constitutional right that has been made retroactive on collateral review by the Supreme Court of the United States; or (D) the date on which the factual predicate of the claim could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This one-year limitations period tolls while Petitioner's properly filed application for postconviction or other collateral relief is pending in the state courts. *Id.* § 2244(d)(2).

Most of Petitioner's claims are governed by § 2244(d)(1)(A). That provision sets the start-date for the one-year limitations period either when: (1) the prisoner completes the appeal process through to the Supreme Court of the United States; or, as here, (2) the time for the next step in the appeal process expires after the petitioner has taken no further action. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The U. S. Supreme Court denied Petitioner's petition for certiorari on

June 17, 2019. *Peters*, No. 18-9038, 139 S. Ct. 2724. This denial completed Petitioner's direct appeal. Petitioner had one year from June 17, 2019 (plus any time tolled by state postconviction and collateral proceedings, 28 U.S.C. § 2244(b)(2)), to file his federal habeas corpus petition.

To determine how much, if any, time was tolled, the court must examine Petitioner's multiple state habeas corpus petitions. The final event in the state habeas proceeding occurred when the state court denied Petitioner's PLA on November 22, 2017. *Peters*, No. 122628, 93 N.E.3d 1068. The state habeas proceeding thus ended before the Supreme Court's denial of certiorari on June 17, 2019, and the state habeas proceeding has no tolling effect.

The original federal habeas petition filed in this court on May 14, 2018 is timely; that petition was filed well before the completion of Petitioner's direct appeal on June 17, 2019, the date triggering commencement of the one-year statute of limitations under § 2244(d)(1)(A). *See Peters*, No. 18-9038, 139 S. Ct. 2724. This federal habeas petition can relate back to that timely filing because the federal district court stayed the petition in 2018, after its initial filing (Order Staying Pet. [27] ¶ 1). Importantly, however, the federal petition can only relate back to claims made in that 2018 petition, challenging the state habeas proceedings. *See Mayle*, 545 U.S. at 664. Also, the filing of the federal petition has no tolling effect under § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Recall that Petitioner had also sought relief from judgment in a petition filed on July 14, 2017 before the McHenry County Circuit Court, the court of conviction. *Peters*, 2020 IL App (2d) 170857-U, ¶ 17; *see also* 735 ILCS 5/2-1401 (Illinois statute permitting a party to file for relief from judgment). The trial court denied the petition. *Peters*, 2020 IL App (2d) 170857-U ¶ 22. The Appellate Court of Illinois, Second District, affirmed, *id*. ¶ 37, and the Supreme Court of Illinois denied Petitioner's PLA. *Peters*, No. 125992, 154 N.E.3d at 766. These proceedings tolled the statute of limitations because they were pending when Petitioner's direct appeal period ended on

July 17, 2019. *See id.* The tolling effect ran until the denial of the PLA on September 30, 2020. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007).

Finally, this court examines Petitioner's two postconviction petitions for any tolling effect. On June 8, 2020, while his 2-1401 proceedings were pending, Petitioner filed a *pro se* postconviction petition, pursuant to 725 ILCS 5/122-1, before the McHenry County Circuit Court. *Peters*, 2022 IL App (2d) 210365-U, ¶ 6. As mentioned, the 2-1401 proceedings were completed on September 30, 2020, and the tolling effect of the 2-1401 proceedings ended on that date. *Peters*, No. 125992, 154 N.E.3d at 766. Because the postconviction proceedings were still pending on September 30, 2020, those proceedings continued the tolling under § 2244(d)(2). *Lawrence*, 549 U.S. at 337. Once the postconviction proceedings ended on March 29, 2023, the tolling ended. *Id.*; *see also Peters*, No. 129294, 210 N.E.3d at 771.

Under some circumstances, a successive postconviction petition in state court can also toll the statute of limitations. As described earlier, on October 3, 2022, Petitioner sought leave to file a *pro se* successive postconviction petition in the McHenry County Circuit Court. *Peters*, 2024 IL App (2d) 230116-U, ¶ 8. But the state court denied leave to file that petition, as well as his requests to file amended and second amended successive postconviction petitions. *Id*. ¶¶ 13, 15.) The Appellate Court of Illinois, Second District affirmed, *id*. ¶ 28, and the Supreme Court of Illinois denied Petitioner's PLA. *Peters*, No. 130841, 244 N.E.3d 231. The successive postconviction petition did not toll the statute of limitations because the state court denied Petitioner leave to bring a second state postconviction petition. *See Martinez v. Jones*, 556 F.3d 637, 638–39 (7th Cir. 2009) (per curiam) ("[T]he second petition tolls the limitations period only if the state court grants permission to file it.").

The upshot is that tolling ended under § 2244(d)(2) when the first state postconviction proceedings completed on March 29, 2023, meaning that the one-year limitations period therefore

expired on March 29, 2024. Petitioner did not file his amended petition until January 2025, rendering his claims untimely unless they relate back to the original petition. (Am. Pet. [114] ¶ 1.)

**II. Relation Back**

For statute of limitations purposes, claims can relate back when the claims in the two petitions share a common core of operative facts. *Mayle*, 545 U.S. at 664. Here, both Petitioner's original habeas petition and his Amended Complaint challenge the adjudication of his state habeas proceedings. The Amended Petition's claim challenging the state habeas proceeding therefore relates back to the original petition. All other claims in Petitioner's Amended Petition are untimely, however, because they do not relate to the adjudication of Petitioner's state habeas proceedings; in other words, they cannot relate back because the claims share no common core of operative facts with the original petition. *Id.*

Two points to note at this time: First, the court bases the foregoing statute of limitations calculation on the end of Petitioner's direct appeal period under § 2244(d)(1)(A) and associated tolling under § 2244(d)(2). Petitioner has also attempted to assert claims regarding destruction of evidence or prosecutorial misconduct. If those claims arose at a later date and were outcome-determinative, they might implicate a different statute of limitations calculation under § 2244(d)(1)(D). For the reasons explained here, however, regardless of the validity of any statute of limitations calculations, the evidence of Petitioner's guilt is overwhelming, rendering his claims meritless. *See Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) (upholding lower court's decision to reject a petition on the merits without resolving a limitations defense).

Second, the record does not suggest any grounds for equitable tolling. To obtain equitable tolling, Petitioner must demonstrate that he was: (1) diligently pursuing his rights; and (2) an extraordinary circumstance stood in his way of making a timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). Equitable tolling is a demanding, though flexible standard. *Gray v. Zatecky*, 865 F.3d 909, 912 (7th Cir.

2017). The court considers the "entire hand" the prisoner was "dealt" to determine whether something extraordinary prevented him from making a timely filing of the habeas corpus petition. *Moreland v. Eplett*, 18 F.4th 261, 271 (7th Cir. 2021).

When examining the "entire hand" that Petitioner was dealt, this court only finds relevant the fact that the United States District Court for the Southern District of Illinois initially entered a stay at the outset of this litigation. (Order Staying Pet. [27] ¶ 1.) As mentioned, a federal habeas corpus petition's filing does not toll the statute of limitations. *Duncan*, 533 U.S. at 181–82. Although the federal district court issued a stay protecting the timeliness of the claim raised in the original petition, that stay protected only the claims in the Amended Petition that related back to the original petition. The stay protected no other claims in the Amended Petition. Though Petitioner waited until after all state court proceedings were complete to bring an amended state court petition, that successive postconviction petition did not toll the statute of limitations.

The court may grant equitable tolling if an extraordinary circumstance prevented Petitioner from timely filing his petition. *Moreland*, 18 F.4th at 271. An "extraordinary circumstance" goes "beyond the applicant's control [to] prevent[] timely filing; simple legal errors, such as ignorance of the federal deadline, do not suffice." *Id.* (citing *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020)). That Petitioner may have failed to understand the application of the statute of limitations is not be surprising in this case, but the alleged failure does not excuse application of the timeliness bar.[5]

5 Judge Reinhard could potentially have warned Petitioner that, should Petitioner later seek to file an otherwise-untimely amended habeas petition, any such amended filing could relate back only to the claims asserted in 2018. But the Supreme Court has made clear that a district judge has no obligation to issue such warnings. See *Pliler v. Ford*, 542 U.S. 225, 231-32 (2004).

## III. Merits of the Single Timely Claim

Because equitable tolling is not appropriate, what remains is Petitioner's challenge to the state court's denial of his request for a transcript in the state habeas corpus petition. That claim relates back from the Amended Petition to the original petition. But it is meritless. A habeas corpus petition under Illinois law can only challenge whether the prisoner is incarcerated under a judgment that was entered by a court that lacks subject matter or personal jurisdiction or some subsequent occurrence entitles him to his release. 735 ILCS 5/10-101 *et seq.*; *see also United States ex rel. Nitz v. Anglin*, No. 11 C 1904, 2014 WL 831610, at *7 (N.D. Ill. Mar. 4, 2014) (citing *Beacham v. Walker*, 231 Ill.2d 51, 58, 896 N.E.2d 327, 332 (Ill. 2008)). A violation of a constitutional right is not grounds for relief under an Illinois habeas corpus petition. *Anglin*, No. 11 C 1904, 2014 WL 831610, at *7. Conversely, a federal habeas corpus petition requires a prisoner to show he is being held in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Applying these principles, Petitioner's arguments do not meet the requirements of Illinois law for a habeas challenge. Petitioner's claims focus on the court's treatment of his state habeas petition. But proceedings for a state habeas corpus petition do not implicate a federal constitutional claim. As such, Petitioner's arguments constitute non-cognizable state law claims. *Estelle v. McGuire*, 502 U.S. 62, 71 (1991).

Alternatively, state court can violate federal law through the deprivation of due process; however, to demonstrate the due process violation, Petitioner must show that state court error likely resulted in the conviction of an innocent person. *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). For this reason, the court will comment briefly on the evidence of guilt in this case, which would bar relief for this Petitioner, even if his claims were timely. Although Petitioner fled from the scene, he was arrested on a nearby road later that evening. *Peters*, 2018 IL App (2d) 150650 ¶ 10, 99 N.E. 3d at 497. Petitioner confessed to the crime during a police custodial

interrogation. *Id*. Petitioner told the police that they could locate his AR-15 rifle that he used in the ambush in a local waterway. *Peters*, 2020 IL App (2d) 170857-U at ¶ 10. Using that information, the police recovered the weapon, and forensic testing matched the rifle to at least 17 shell casings recovered from the scene of the ambush. *Peters*, 2018 IL App (2d) 150650 ¶ 10, 99 N.E. 3d at 497. The ambush occurred at Petitioner's home, and the three injured officers testified against Petitioner. *Id*. ¶ 5. They recounted Petitioner's refusal to allow officers to talk to his wife or to exit his home. *Id*. Finally, witnesses testified that Petitioner said, "We're going to do this, let's do this. Airborne" immediately prior to the commencement of the shooting, *id*. ¶ 6, and once Petitioner came out of the home and continued shooting at the officers, he shouted, "I'm a U.S. Army paratrooper, I hope you're ready to die 'cause I am." *Id*. ¶ 8. Petitioner's flight from the scene undermines his assertion that he believed the three deputies were intruders.

In short, evidence amply supports Petitioner's conviction. The court concludes that any alleged error did not have a "substantial and injurious effect" on Petitioner's case, and the claims Petitioner raises in the original petition and Amended Petition are meritless. *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

**IV. Certificate of Appealability and Notice of Appeal Rights**

The court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right. Simply put, reasonable jurists would not debate, much less disagree, with this court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this court. If Petitioner wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* FED. R. APP. P. 4(a)(1). Petitioner need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Petitioner wishes the court to

reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* FED. R. CIV. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* FED. R. APP. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* FED. R. CIV. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* FED. R. APP. P. 4(a)(4)(A)(vi).

## CONCLUSION

Petitioner's Amended Petition (Am. Pet. [114].) is denied on the merits. Petitioner's motions for status update and any other pending motions, are stricken as moot. (*See* Mots. for Status Update [150, 151, 152]) The court declines to issue a certificate of appealability. The Clerk is instructed to enter a Rule 58 judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

ENTERED:

Dated: September 29, 2026

REBECCA R. PALLMEYER
United States District Judge